JOHN HENRY JACKSON, JR., a/k/a Elmer Wilkins,
a/k/a Elmer Douglas, a/k/a Earl Wilkins, a/k/a
Douglas Jackson *v.* STATE OF MARYLAND

[No. 1191, September Term, 1981.]

*Decided September 3, 1982.*

The cause was submitted on briefs to GILBERT, C. J., and THOMPSON and MOORE, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Patrick D. Hanley, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Richard B. Rosenblatt, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Mark S. Cohen, Assistant State's Attorney for Baltimore City,* for appellee.

MOORE, J., delivered the opinion of the Court.

In this appeal from an assault conviction, we consider *nostra sponte* whether Maryland Rule 736 g 2 (1981 Cum.Supp.) preserves for appellate review a pretrial motion to suppress an improper identification and unlawfully seized evidence when no objection is made to their introduction at trial. We think that, except under certain circumstances where waiver is shown, the rule clearly establishes its own basis for appellate review. *Whitfield v. State,* 42 Md. App. 107, 124-5, 400 A.2d 772 (1979), *rev'd on other grounds,* 287 Md. 124, 411 A.2d 415 (1980). Despite our finding that the suppression issue has been properly preserved, we shall affirm the judgment below because none of appellant's contentions has merit.

I

On July 2, 1981, the appellant, John Henry Jackson, Jr., was convicted by a jury in the Criminal Court of Baltimore (Bell, J.) of common law assault and was sentenced to eight years' imprisonment. On appeal he contends:

1. The trial court erred in permitting the in-court identification testimony of the victim;
2. The trial court erred in admitting a knife into evidence;

3. The trial court erred in permitting the State to cross-examine him about a prior conviction for manslaughter;

4. The evidence was insufficient to sustain the conviction; and

5. He was denied genuine and effective legal representation.

Alton Boulware testified that he lived in a rowhouse at 4672 Park Heights Avenue, Baltimore City, with his parents, three sisters, and eight brothers. In the early evening of October 3, 1979, he was sitting on the front porch with his sister, Cheryl Boulware, and his next-door neighbor, Stephen Perry. The appellant and his friend were sitting on the porch "a door away." The latter walked up to Mr. Boulware and asked him to come down from his porch and talk. Mr. Boulware went down to the sidewalk and spoke with the man. While he was doing so, he said, appellant "walked up and shook my hand and then he mumbled something and walked back down the street and sat on the steps." A short time later, Mr. Boulware testified, appellant returned and, without any provocation, stabbed him in the chest. Then, he ran away, "hollering that he had stabbed me."

At that time, Officer Phillip Benton was driving southbound in the 4600 block of Park Heights Avenue. Two persons suddenly ran out in front of his patrol car, waving their arms and yelling, "police!" When he stopped, the pair approached him, pointed to appellant, and said he had just stabbed a man.[1] The officer turned his car around, drove back to appellant, stopped him, and placed him under arrest. A knife was found about five feet from where appellant was standing. Upon analysis, the bloodstains on the knife matched Mr. Boulware's blood type.

---

1. Officer Benton did not testify who these people were and they were not called or identified at trial. At the suppression hearing, the officer testified as to what these two people told him, but at the trial he was not permitted to repeat that testimony.

Appellant admitted that he had stabbed Mr. Boulware, but claimed self-defense. He explained that late the night before, he went to visit his sister, Brenda Williams, at 4674 Park Heights Avenue. He knocked and while waiting for her to answer, three "guys" came up onto the porch and robbed him at gunpoint. The three men fled and he pursued them, but they escaped. Afterwards, he explained, he did not return to his sister's house, but took a bus to his mother's house. He spent the rest of that night and the next day at his mother's house. He returned to his sister's neighborhood the evening of October 3, 1979, and, while walking on Park Heights Avenue, he saw Mr. Boulware and recognized him as one of the men who had robbed him. He said that when Mr. Boulware realized that appellant was the man he had robbed the previous evening, Mr. Boulware came at him with a gun, cursing and threatening to "break [appellant's] head." Appellant said he pulled his knife and backed off but Mr. Boulware lunged at him, and he stabbed Mr. Boulware in self-defense.

## II

Prior to trial, appellant filed two motions under Maryland Rule 736 requesting the court to refuse to admit the knife and any identification testimony offered by Mr. Boulware. The court denied both motions. At trial Mr. Boulware identified appellant as his assailant and the knife was admitted, both without objection.

In his brief, appellant assumes that filing the motions under Rule 736, in and of itself, preserved these issues for review. The State does not address the issue. We do so to emphasize and explicate this Court's previous interpretation of the rule in *Whitfield, supra,* 42 Md. App. at 124-5.

Initially, we must consider the impact, if any, of Maryland Rule 761 upon Rule 736. The latter provides that a pretrial ruling denying a motion to suppress evidence under Rule 736 a 3 and 4 is reviewable on appeal of the conviction.[2] Rule

---

2. The text of Md. Rule 736 a and g 2 is as follows:

    a. *Mandatory Motions.*

    A motion asserting one of the following matters shall be filed in

761, on the other hand, requires that objections to a court's ruling must be made as provided by Rule 522 to be preserved. Rule 522 d 2 requires that "every objection to the admissibility of evidence shall be made at the time when such evidence is offered, . . . otherwise the objection shall be treated as waived." Rule 761, relying as it does upon Rule 522, is a general rule; Rule 736 is specific, concerning only suppression motions in criminal cases. Since Rule 736 is directed at a specific concern it is obvious it was intended to override Rule 761. We conclude, therefore, that whenever a motion is filed seeking to suppress one of the types of evidence specified in Rule 736 a 3 or 4, the lower court's ruling on the motion is, by virtue of Rule 736 g 2, preserved for appellate review, even if no contemporary objection is made at trial.

However, simply filing a pretrial motion under Rule 736 does not necessarily preserve the suppression issue for appellate review. The right of appellate review can be waived in many ways. Obviously, if the defendant fails to comply with the time requirements for filing a Rule 736 motion, he waives his right to pursue the motion, *Jones v. State,* 42 Md. App. 209, 400 A.2d 1 (1979), *rev'd on other grounds,* 286 Md. 540 (1979). If a defendant, after filing a

---

conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:

1. A defect in the institution of the prosecution;

2. A defect in the charging document, other than its failure to show jurisdiction in the court or to charge an offense which defenses can be noticed by the court at any time;

3. An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

4. An unlawfully obtained admission, statement or confession;

5. A motion for joint or separate trial of defendants or offenses.

g. *Effect of Determination of Certain Motions.*

2. Suppression of Evidence.

If the court grants a motion to suppress evidence, the evidence shall be excluded and shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes. If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, in the exercise of its discretion, grants a hearing *de novo* on a renewal of the motion. A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction.

Rule 736 motion, fails to pursue it, a waiver may result. *White v. State,* 23 Md. App. 151, 155-6, 326 A.2d 219 (1974), *cert. denied,* 273 Md. 723 (1975). If a hearing is granted but the defendant presents no grounds to support the motion, his failure "amounts" to a waiver, *Bolden v. State,* 44 Md. App. 643, 653, 410 A.2d 1085 (1980), *cert. denied,* 287 Md. 750 (1980).

Similarly, if a pretrial motion is denied and at trial appellant says he has no objection to the admission of the contested evidence, his statement effects a waiver, *Erman v. State,* 49 Md. App. 605, 630, 434 A.2d 1030 (1981), *cert. denied,* 292 Md. 13 (1981); and if the evidence that is the subject of the suppression hearing is never offered at trial, the trial judge's ruling on the motion is not preserved for appellate review.[3] *Linkey v. State,* 46 Md. App. 312, 416 A.2d 286 (1980).

Finally, if after a ruling is issued on a 736 motion, the accused is convicted by a properly accepted guilty plea, the plea effects a waiver.[4] *See Sutton v. State,* 289 Md. 359, 364-65, 424 A.2d 755 (1981).

In sum, the clear intent of Rule 736 is to preserve for appellate review any mandatory motion properly made and pursued, irrespective of whether any objection is made at trial.[5] *See also, Deyermond v. State,* 19 Md. App. 698, 313 A.2d 709 (1974), *cert. denied,* 420 U.S. 966 (1975).

### III

Although we have found the suppression issues properly preserved, our review of the record reveals two reasons why

---

**3.** The examples listed are not exhaustive; they simply indicate the type of actions by a defendant that can constitute a waiver of his right to challenge a trial court's ruling on a Rule 736 motion.

**4.** We note that *Lefkowitz v. Newsome,* 420 U.S. 283, 289 (1975), held that States could properly enact statutes to preserve lower court rulings on pretrial motions for appellate review in cases tried on guilty pleas. However, no such provision has, by rule, statute or judicial precedent, been put into effect in this State.

**5.** In determining whether the denial of a motion to suppress under Maryland Rule 736 (1981 Cum.Supp.) is correct, the appellate court looks to the record of the suppression hearing *Pharr v. State,* 36 Md. App. 615, 375 A.2d 1129 (1977), *cert. denied,* 281 Md. 742 (1977), and does not consider the record of the trial itself.

appellant is not entitled to a reversal of his conviction on the ground of improper identification. First, the victim's sister, Cheryl Boulware, witnessed the stabbing and, without any objection, positively identified the appellant as her brother's assailant.

Second, we do not believe that the photographic viewing was impermissibly suggestive, as asserted by appellant, because only one of the photographs showed a man without a shirt. At the suppression hearing, agent Albert Marcus testified that he visited Mr. Boulware in Sinai Hospital the day after the assault. He showed Mr. Boulware photographs from which Mr. Boulware positively identified appellant, who was barechested. *See Dobson v. State,* 24 Md. App. 644, 653-4, 335 A.2d 124 (1975), *cert. denied,* 275 Md. 747 (1975).

Following the holding of *Neil v. Biggers,* 409 U.S. 188 (1972), five factors are to be considered in evaluating the likelihood of misidentification. These are:

1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness' degree of attention [to the offender];
3. The accuracy of the witness' prior description of the criminal;
4. The level of certainty demonstrated by the witness at the confrontation; and
5. The length of time between the crime and the confrontation.

*Dobson, supra,* 24 Md. App. at 653-4. That case upheld the admission of an identification similar to that of the instant case, concluding:

". . . although the photographic identification procedure, depicting only one person wearing glasses out of fifteen photographs shown, was 'impermissibly-unnecessarily suggestive', when the total evidence surrounding that identification is weighed on the scale of *Biggers,* there exists substantial reliability for the identification, and the

identification procedure did not give rise to a very substantial likelihood of misidentification."

*Id.* at 655.

While we do not approve the use of unusual or distinctive photographs in pretrial identification, the circumstances of this case indicate no "substantial likelihood of misidentification," and thus, no error.[6]

Appellant argues that the knife should have been suppressed because the police took it from him in the course of an illegal search.[7] The police did not take the knife from him; they found it on the ground. Because the knife was recovered from the ground, appellant was not subjected to an illegal search. *Morton v. State,* 284 Md. 526, 531, 397 A.2d 1385 (1979). Even if we accept, as appellant argues, that he abandoned the knife because of "unlawful police action," there would still be no Fourth Amendment violation. Agent Marcus was, in view of the facts prompting his arrest of appellant, justified in conducting a "stop and frisk" of appellant. *Anderson v. State,* 282 Md. 701, 387 A.2d 281 (1978); *see Johnson v. State,* 50 Md. App. 584, 439 A.2d 607 (1982).

## IV

The remainder of appellant's arguments are quickly resolved. He asserts that the trial judge erred in permitting the State to impeach his testimony by presenting evidence of a manslaughter conviction. When the State's Attorney asked appellant if he had previously been convicted of manslaughter, he said, without objection, that he had. The issue, therefore, has not been preserved for appellate review. Md. Rule 1085.[8]

---

**6.** There was no evidence that the appellant was shirtless at the time of the assault or that the photograph of appellant without a shirt made him any more identifiable.

**7.** This issue may also be deemed waived because appellant conceded that he stabbed Mr. Boulware, but claimed he did so in self-defense. *See Clay v. State,* 211 Md. 577, 586, 128 A.2d 634 (1957).

**8.** In *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981), the Court of Appeals stated that evidence of a prior felony conviction could be used for impeachment purposes.

Appellant claims that the evidence was insufficient to sustain his conviction. His basis is that the testimony presented by agent Marcus, called as a defense witness, contradicted the evidence of the victim and two other State witnesses. Contradictions between the testimony presented by defense witnesses and State witnesses go only to the weight of the evidence, not to its sufficiency. Such contradictions do not provide a basis for finding the evidence insufficient. *Bailey v. State,* 16 Md. App. 83, 294 A.2d 123 (1972).

Finally, appellant asserts that he was denied effective assistance of counsel. First, he complains that his counsel told him that his [the appellant's] sister, Brenda Williams, did not see the October 2, 1979 robbery, but at trial she testified that she did see it. Second, he claims that his counsel failed to cross-examine Officer Benton. Neither of these contentions was presented to the trial judge; accordingly, the issue of the competency of counsel has not been preserved for appellate review. Md. Rule 1085 and *Cooper v. State,* 44 Md. App. 59, 70-1, 407 A.2d 756 (1979).

Having found no merit in any of the appellant's assertions of error, the conviction must be affirmed.

*Judgment affirmed; costs to be paid
by appellant.*