618 A.2d 266

**Paul Christopher RINGE**

v.

**STATE of Maryland.**

**No. 392, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 12, 1993.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Alexander Williams, Jr., State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before ALPERT, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Paul Christopher Ringe, appellant, was convicted in a court trial in the Circuit Court for Prince George's County of robbery and of the first degree murder of his adoptive father, Fred Ringe. He was sentenced to life imprisonment on the murder charge and a concurrent twenty-year term of incarceration on the robbery charge. On appeal he asks:

> Did the trial judge err in denying Appellant's motion to suppress and admitting his statement into evidence?

We shall consider only that evidence before the trial court at the hearing on the motion to suppress. *Rice v. State*, 89 Md.App. 133, 138–39, 597 A.2d 1001 (1991), *cert. denied*, 325 Md. 397, 601 A.2d 130 (1992) ("When the question of the dishonor of a constitutional right arises by the denial of a motion to suppress, the relevant facts which we consider 'are limited to those produced at the suppression hearing ... which are most favorable to the State as the prevailing party on the motion.'") (quoting *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990), quoting *Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22 (1990)) (citation omitted).

### Suppression Hearing

Appellant moved to suppress "any and all evidence" based on alleged violations of his constitutional rights. The motion was particularized as a "motion to suppress a statement, and the grounds alleged are *Miranda* [1] and the voluntariness of the statement."

At the suppression hearing, Officer Pippin, a New Jersey police officer, testified that he had been involved in the pursuit and arrest of appellant in New Jersey. Appellant was apprehended and arrested at approximately two o'clock in the afternoon. He was then taken to the nearest police facility where he remained for twenty minutes before being transferred to the Bordertown Township Police Department.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Officer Pippin testified further that he contacted the Prince George's County Police Department by telephone concerning appellant's wanted status. After speaking with them, he offered food to Ringe. After Ringe had eaten a pizza, Officer Pippin informed him that detectives from Prince George's County were coming to interview him. According to Pippin, appellant responded that he would rather talk to the New Jersey officers and that he did not want to talk to the Prince George's officers. At that time, Officer Pippin had no knowledge of the murder in Maryland. Pippin asked Ringe if he wanted to make a statement, and Ringe responded that he did.

Pippin then contacted the Maryland detectives and told them that the appellant wanted to give the New Jersey officers a statement. The Maryland detectives approved, and Pippin informed his lieutenant. He then set up a video tape and video-taped an interview with Ringe.

Officer Pippin testified at the hearing that he advised Ringe of his *Miranda* rights on video tape. Pippin used a "police department card" that was signed by appellant. The card was admitted into evidence. The New Jersey officers then conducted an interview with Ringe that lasted approximately two hours. The video-taped interview was introduced into evidence.[2]

Thereafter, the trial court viewed and listened to the preliminary portion of the video tape that concerned the waiver of the right to remain silent. At one point, the court stated:

THE COURT: ...

Now what I'm hearing is a motion to suppress whether ... he was given his *Miranda* rights and whether ... the statement was voluntary; isn't that correct?

---

**2.** Our review of the video tape confirms that the *Miranda* rights were properly given. Appellant is seen on the tape signing the form in his lap because he said the handcuffs prohibited him from signing the form on the table.

MR. NILAND [appellant's counsel]: Well, there are issues regarding *Miranda* rights, whether there was an appropriate waiver and whether the statement was voluntary.

THE COURT: ... Now, is it necessary for me to go on and listen to the rest of this statement? Either it was voluntary or it wasn't voluntary already, and he was either given his rights or waived them already.

. . . .

MR. NILAND: My answer is no, I don't see what else it would show you that you haven't already seen.[3]

On cross-examination, Pippin testified that, prior to the taking of the statement, Ringe informed him that he was on disability and that he had AIDS. The officer also stated that during the interview, after Ringe had waived his right to remain silent, Ringe stated that he had mental problems in the past.

On redirect, Pippin testified that Ringe did not appear to be suffering from lack of sleep nor did he seem to be having any trouble communicating due to lack of sleep. The evidence indicated that during the interview Ringe was given a beverage upon his request.

Lieutenant Hind of the New Jersey Police Department then testified. Both he and Pippin testified that Ringe never requested an attorney. They also testified that no threats, promises or offers of rewards, or inducements were made to him. Hind further stated that the matter shown on the video tape fairly and accurately represented the interview. No other facts were presented at the suppression hearing.[4] Appellant offered no evidence.

---

**3.** We do not know how much of the video tape was viewed by the trial court. In later testimony, the State's attorney indicated that the tape was played for one hour and fifteen minutes.

**4.** Hind did testify that the appellant was subject to some degree of physical force from the officers during his arrest at the river, and that he had been scratched and bruised as he ran through the brush and woods while attempting to escape. At the time of the interview, he

## The Law

In reviewing the denial of a motion to suppress under Maryland Rule 4–252, we look only to the record of the suppression hearing and do not consider the record of the trial. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987) (citing *Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982)). *See Gamble v. State,* 318 Md. 120, 125, 567 A.2d 95 (1989); *Herod v. State,* 311 Md. 288, 290, 534 A.2d 362 (1987). In considering the evidence presented at the suppression hearing, "[w]e extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibilities of contradicting witnesses and to weighing and determining first-level facts." *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356 (1990). When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that his findings are clearly erroneous. *Riddick,* 319 Md. at 183, 571 A.2d 1239.

As to the ultimate conclusion, we must make our own constitutional appraisal by reviewing the law and applying it to the facts of the case. *Id.; Perkins,* 83 Md.App. at 346, 574 A.2d 356. In dealing with the precise issue now before us, the voluntariness of a confession, the Court of Appeals said:

> In reviewing the issue of whether a confession is voluntary under the Fourteenth Amendment, we accept the trial judge's factual findings as correct unless they are clearly erroneous, and from these findings, along with a review of the entire record, make an independent determination of "the ultimate fact, namely, the existence or nonexistence of voluntariness."

*Hoey v. State,* 311 Md. 473, 484, 536 A.2d 622 (1988) (citations omitted).

---

had not changed his clothes or showered due to the lack of clothing and facilities at the stationhouse.

■ "In Maryland, a defendant's confession is only admissible if it is (1) voluntary under Maryland nonconstitutional law, (2) voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution ..., and (3) elicited in conformance with the mandates of *Miranda.*" *Hoey*, 311 Md. at 480, 536 A.2d 622 (citations omitted). Under Maryland nonconstitutional law, the court must first determine whether the defendant was mentally capable of making a confession. *Id.* at 481, 536 A.2d 622. The Court of Appeals in *Hoey* concluded that, in order to determine that a confession is involuntary, the defendant must be "so mentally impaired that he does not know or understand what he is saying." *Id.* at 482, 536 A.2d 622. In the present case, there was no evidence presented at the suppression hearing that Ringe did not understand what he was saying. On the contrary, both officers testified that they had no problems communicating with him. In addition, the court viewed Ringe at the time he made the statement and concluded that he understood the questions and knew that he was waiving his rights. Upon our review of the tape, we concur with the trial judge. We therefore conclude that Ringe had the mental capacity to make a confession.

■ The next step in determining whether a confession is voluntary under Maryland nonconstitutional law is whether the confession was given "freely and voluntarily." *Id.* at 483, 536 A.2d 622.

Under Maryland nonconstitutional law, a confession is inadmissible unless it is "shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." Thus, a confession is involuntary if it is induced by force, undue influence, improper promises, or threats. Whether particular police conduct is deemed improper depends on the totality of the circumstances surrounding the defendant's confession, and a number of factors should be considered: the defendant's age and education, the defendant's physical condition and mental capacity, the length of the inter-

rogation, the manner of questioning, and whether there was any physical mistreatment of the defendant.

*Id.* (citations omitted).

Applying that test to the evidence presented in the record before us, we hold that Judge McCullough did not err in ruling that the statement of Ringe was voluntary. Thus, it was properly admitted under the nonconstitutional law of Maryland.

■ The Court of Appeals discussed *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), in *Hoey* and opined: "Applying the Supreme Court's test for voluntariness under the Due Process Clause, we look first to determine if there was any police coercion." *Hoey*, 311 Md. at 486, 536 A.2d 622. In the case *sub judice*, there is a complete absence of any evidence supporting coercion. The evidence shows that appellant was provided with food and a drink; that he was given a blanket when he complained that he was cold; and when he stated that he was tired, the officers offered to stop. We hold, therefore, that under our independent review of that evidence contained in the record forwarded to us, Ringe's statement was not involuntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

■ The last issue we must examine is whether Ringe's confession was obtained in conformance with *Miranda*. Once again, the test to be applied is whether there was any "police overreaching." *Hoey*, 311 Md. at 487, 536 A.2d 622. Officer Pippin read appellant his *Miranda* rights, and appellant signed the card. The procedure was video-taped. That video tape was offered in evidence and fully supports the position of the State. As discussed above, no police coercion was involved. Accordingly, we hold that Ringe waived his *Miranda* rights voluntarily, and his confession is admissible.

■ We shall comment on the procedure utilized by the parties below in relation to the video-taped statement in order that the appellate process may be made easier in the

future. When a video tape is admitted into evidence without a transcript, the tape is required to be available for any necessary review by concerned judges in their respective forums. A review of the video tape may be even more necessary when appellate judges are required to make independent appraisals of constitutional issues.

This Court generally sits in panels of three judges; all seven members of the Court of Appeals sit in its cases. The working offices of the various judges are scattered throughout the State. The logistical burden can be difficult when the video tape is not accompanied by transcripts of what occurs thereon and when the trial court does not cause its hearing of the video tape to be transcribed by the court reporter and when only one copy of the audio or video tape is supplied with the record.

As we recall, the customary trial court practice in reviewing statements that have been audio recorded is that a transcript of the statement is made from the audio tape prior to its presentation at trial. With proper authentication, the transcribed statement, signed or otherwise, is then offered in evidence. The tape is also offered as evidentiary and record support for the transcript. It is then only necessary to refer to the tape in the event of disputes as to the accuracy of the transcription or to ascertain something—demeanor for example—not accurately reflected in the transcript.[5] In lieu of that procedure, the court reporter should transcribe that which is on the audio or video tape reviewed by the trial court so that there will be a written record to assist the parties and the courts in the appellate process. If either transcription process is used, the parties can then refer to the page numbers of the transcript that contain the matter they contend supports their various positions.

---

5. A viewing of the tape in some cases may be necessary, such as when the constitutional issue of voluntariness is based not on what was said, but on what was done or on the atmosphere of the proceeding.

Maryland Rules 8–503 and 8–504 require that the briefs of the parties reference the appropriate pages of the trial record or transcripts of testimony. When there is no extract, *i.e.*, generally in criminal cases in the Court of Special Appeals, and no transcripts are made, the requirements of the rule are difficult to meet.

When transcripts are not supplied and, as in the case at bar, when specific time of tape references are not made in the briefs, the appellate court must review the entire tape until the appropriate portion of the tape is reached. Given the circumstances of a particular case, when only one copy of a tape is made it may have to be circulated to three or more judges, most of whom do not have VCRs in their working offices and thus must take them elsewhere for viewing.

We note further that in *Jacobs v. State*, 45 Md.App. 634, 641–42, 415 A.2d 590, *cert. denied*, 288 Md. 737 (1980), an audio tape recording of a telephone conversation was admitted into evidence at the trial, but no transcript was prepared and/or included in the record on appeal. We said:

> No transcript of it has been made ... and included in this record. The burden in this regard is clearly upon the appellant. In view of this failure of the appellant to perfect the record, we have no way of knowing [what] the telephone call ... contained.... [Citations omitted.]

*See also Whack v. State*, 94 Md.App. 107, 127, 615 A.2d 1226, 1236 (1992).

We do not further address, for obvious reasons, appellee's contention that the issues here resolved have not been preserved for appeal because of the failure of the appellant to include the video-taped statement in the record. Here, the issue was, at least in part, the conditions under which the statement was given. Some of that could not be gleaned as well from a transcript alone. Although we would have been materially assisted by some direction as to what parts of the tape were relevant, we have viewed such of it

as we regarded pertinent and it supports the decision of the trial judge.

This case illustrates some of the problems that appellate courts have in dealing with audio or video tapes, computer graphic evidence, and other emerging technologies that are fast becoming a part of the trial process. We would urge the Rules Committee to address this matter.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

ALPERT, Judge, concurring.

I join my learned colleagues in affirming the judgment of the Circuit Court for Prince George's County. I part company with them regarding the necessity to view the video tape.[1]

According to the majority, it is not necessary to address "appellee's contention that the issues here resolved have not been preserved for appeal because of a failure of the appellant to include the video taped statement in the record." The majority takes this position because they believe that it was necessary to view the video tape because "here, the issue was, at least in part, the conditions under which the statement was given." Those "conditions," which took at least 1½ hours to view on a videotape, could have been described by the motions judge. The description should have been transcribed, thus enabling the reader of the transcript to make a determination as to "conditions" based upon a kind of record that has certainly proved adequate for many years.

The majority also suggests that it is necessary to view the video tape in order to ascertain "demeanor, for exam-

---

**1.** I would further point out that Md.Rule 8–411(a) requires a transcription of all the testimony or that part of the testimony that the parties agree, by written stipulation filed with the clerk of the lower court, is necessary for the appeal. Certainly, that which proceeded before the hearing judge at the motions hearing—the video tape—was absolutely necessary for this appeal. It was not, however, transcribed.

ple—not accurately reflected in the transcript." Once again, a trial judge could accurately and adequately describe demeanor, which description should be transcribed. The transcript, in turn (and of course), would be reviewed by the appellate court, as has been done for decades. The majority further posits that "a viewing of the tape in some cases may be necessary, such as when the constitutional issue of voluntariness is based not only on what was said, but on what was done or on the atmosphere of the proceeding."

Our own "independent, reflective constitutional judgment" does not require us to engage in *de novo* review, particularly with respect to first level facts:

What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of constitutionally-protected right is involved is that, although we give great weight to the findings of the hearings judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested), we must make our own independent judgment as to what to make of those facts; we must in making that independent judgment resolve for ourselves the ultimate second-level fact the existence or non-existence of voluntariness.

*Walker v. State,* 12 Md.App. 684, 695, 280 A.2d 260 (1971).

Perceiving the demeanor of a witness (here, the appellant) is a phenomenon that a hearing judge is capable of finding as "first-level facts." That judge would *see* the demeanor of the witness; that judge would *see* the conditions under which the confession was made; and that judge would *describe* them for the record, which record of course would be transcribed for our reading. We ought not substitute our judgment on those kinds of first-level facts by reviewing the video tapes of confessions. We should, on the other hand, be reading transcripts of the entire proceeding, which should include a *transcript* of the video tape and the judge's findings with regard to the video tape.

I do not quarrel with the introduction and use of video tape evidence. My concern is with the notion that an appellate court should view the video tape rather than a transcript. That notion, that process, is fraught with dangers. It is a burden with which the appellate courts of this state are ill-equipped to handle on an ongoing basis.

Where will it end? In fourth amendment search and seizure cases, will we be required to view video tapes of surveillances—or the execution of search warrants?

In sixth amendment "ineffective assistance of counsel" claims, how many hours of a trial will we be compelled to observe?

Where will it end?