660 A.2d 959

**Robert DEDO**

v.

**STATE of Maryland.**

**No. 1512, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

June 29, 1995.

440

442

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Argued before FISCHER, HARRELL and MURPHY, JJ.

HARRELL, Judge.

On 15 June 1994, appellant, Robert Dedo, was convicted, on an agreed statement of facts, by the Circuit Court for Wicomico County (Simpson, J.) of one count of felonious possession of lysergic acid diethylamide (LSD). Appellant was sentenced to two years' imprisonment.[1] A timely appeal was noted to this Court.

## ISSUES

I. Did the [suppression hearing] judge err in refusing to suppress evidence seized in the course of an illegal search of appellant's truck?

---

1. Although the docket entries and commitment record indicate that appellant was sentenced to three years' imprisonment, the sentencing transcript indicates a two-year sentence. This discrepancy is discussed in issue IV *infra*.

II. Did the trial judge err in accepting appellant's waiver of his right to a jury trial without a showing on the record that the waiver was made knowingly and voluntarily?

III. Is appellant's sentence illegal because the trial court refused to award credit for some time spent on home detention?

IV. Must the docket entries and the commitment record be corrected to reflect the two-year sentence the lower court imposed?

## FACTS

On 15 August 1993, Corporal James Wilson of the Maryland Natural Resources Police was assigned to "cover" the annual turtle race at Cedar Hill Park in Wicomico County. Corporal Wilson testified that, at approximately 12:00 p.m., he was approached by an informant who advised him that appellant was "involved in distributing LSD on the park grounds." The informant explained that appellant was "wearing a flowered shirt, multi-colored, brown khaki shorts, and that the LSD that he was, in fact, distributing was in his shirt pocket." Corporal Wilson relayed this information to Wicomico County Sheriff's Deputies Mike Nicholas and Claude Holland, who were stationed near the park gate. He also described for them a truck appellant had been observed driving (a blue Chevrolet S–10 pickup with distinctive rims).[2]

Deputy Holland testified that, several minutes after talking to Corporal Wilson, he observed appellant's truck near the entrance to the park. Deputy Holland explained that as he and Sergeant Nicholas[3] approached the vehicle there was "a lot of movement in the inside." According to Deputy Holland, when he conveyed to appellant the information he had received from Corporal Wilson, appellant began "acting very

---

2. Deputy Holland explained that he was familiar with appellant's vehicle because he had "received many complaints in reference to that vehicle" prior to 15 August 1993.

3. Sergeant Nicholas did not testify.

nervous, sweating profusely, [and] would not make eye contact." Appellant denied selling LSD. Deputy Holland testified that he did not believe appellant was telling the truth and requested consent to search the vehicle. Appellant declined. The officers then asked him to step out of the truck, whereupon he was searched. Finding no contraband, Deputy Holland explained that he noticed the shirt described by Corporal Wilson "laying on the seat of the pickup truck." Sergeant Nicholas conducted a search of the shirt and again recovered no contraband. Sergeant Nicholas then searched the vehicle—removing the key from the ignition to open the glove compartment—and recovered, in a plastic baggy, a piece of white paper, with blue flowers printed on it, that was perforated so that it could be torn into eighteen, quarter inch square pieces. It was later determined to be impregnated with LSD.

Appellant was charged with one count of felonious possession of LSD, one count of possession of LSD, and one count of possession of drug paraphernalia. On 22 October 1993, appellant filed a motion to suppress the evidence seized from his vehicle, claiming that the officers did not have probable cause to search his truck. The judge who heard the motion denied it. Thereafter, appellant elected a court trial and was convicted of one count of felonious possession of LSD. The State nol prossed the remaining counts.

## DISCUSSION

### I.

Appellant argues that the circuit court erred in denying his motion to suppress the evidence recovered from his vehicle. Specifically, appellant contends that, "because the officers did not adequately demonstrate the [informant's] reliability in the past or independently corroborate any of the incriminating information the [informant] reported on the day in question, they lacked probable cause for the search." We disagree.

In reviewing the denial of a motion to suppress under Maryland Rule 4–252, we look only to the record of the suppression hearing. We do not consider the record of the trial. *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749 (1987) (citing *Jackson v. State*, 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied*, 294 Md. 652 (1982)); *Rice v. State*, 89 Md.App. 133, 138–39, 597 A.2d 1001 (1991), *cert. denied*, 325 Md. 397, 601 A.2d 130 (1992). In considering the evidence presented at the suppression hearing, we extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibility of witnesses and to weighing and determining first-level facts. *State v. Jones*, 103 Md.App. 548, 653 A.2d 1040 (1995); *Watson v. State*, 282 Md. 73, 84, 382 A.2d 574, *cert. denied*, 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978); *Perkins v. State*, 83 Md.App. 341, 346, 574 A.2d 356 (1990). When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that his findings are clearly erroneous. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990); *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d 430 (1992). When a motion to suppress is denied, an appellate court should consider those facts developed during the suppression hearing that are "most favorable to the State as the prevailing party on the motion." *Riddick*, 319 Md. at 183, 571 A.2d 1239 (citing *Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22 (1990)). But, as to the ultimate, conclusionary fact of whether a search was valid, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *See id.* at 183, 571 A.2d 1239; *Perkins*, 83 Md.App. at 346, 574 A.2d 356.

In making our independent constitutional review of whether probable cause existed sufficient to validate the warrantless search of appellant's vehicle, we observe that a search "conducted without the benefit of a warrant supported by probable cause is per se unreasonable under the fourth amendment, subject to only a few exceptions." *Gamble v. State*, 318 Md. 120, 123, 567 A.2d 95 (1989) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854

(1973)). "However case law recognizes public policy exceptions to the warrant requirement, as in the case of automobile searches." *Malcolm v. State*, 314 Md. 221, 226, 550 A.2d 670 (1988) (citing *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The rationale for permitting a warrantless automobile search in moments of exigency is that "1) the mobility of the vehicle creates a greater need to search without delay and 2) individuals have a lesser reasonable expectation of privacy in their cars as opposed to their homes." *Id.* at 227, 550 A.2d 670 (footnote omitted).

■ Probable cause has been defined as the " 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). The test for probable cause based on an informant's tip is the totality of the circumstances. *Id.* at 230, 103 S.Ct. at 2328. As explained in *Green v. State*, 77 Md.App. 477, 551 A.2d 127 (1989) however, "Although *Illinois v. Gates, supra,* adopted a 'totality of the circumstances' analysis for assessing the existence of probable cause, an informant's veracity, reliability and status remain highly relevant in determining whether probable cause has been established where the police rely upon an informant's tip." *Id.* at 485, 551 A.2d 127. *Accord Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (probable cause to make warrantless arrest where police independently corroborated informant's story, even though corroborating detail was of entirely innocent activity).

In the case *sub judice*, Corporal Wilson testified that he was approached by an informant while monitoring the annual turtle races at Cedar Hill Park. Corporal Wilson explained that he knew the informant, that the informant was reliable, and that the informant had provided information to him "[a]pproximately a dozen times" in the past regarding appellant's involvement in the distribution of drugs. In addition, Corporal Wilson testified that the informant, on three prior occasions, had supplied him with information that resulted in arrests and convictions. Under the totality of the circum-

stances, this testimony was sufficient to establish the informant's veracity and reliability. *Cf. Green v. State,* 77 Md.App. 477, 487, 551 A.2d 127 (1989) (no probable cause where "absolutely no testimony establishing the reliability or character status of the ... informant").

In addition, there was adequate corroboration of the informant's information to provide the officers with probable cause to search appellant's vehicle. The informant stated that appellant was distributing LSD on park grounds, that appellant was wearing a flowered shirt, and that the LSD was in appellant's shirt pocket. Corporal Wilson then relayed this information to Officers Holland and Nicholas, giving them a description of the appellant's distinctive vehicle. The officers thereupon located appellant and his vehicle at the entrance to the park. When first approached by the deputies, appellant was seated in the driver's position and the engine was running. A flowered shirt similar to the one described by the informant was observed on the seat of the vehicle.

Viewing the facts in a light "most favorable to the State as the prevailing party on the motion," *Riddick,* 319 Md. at 183, 571 A.2d 1239, yet performing an independent review of the constitutionality of the search, *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Perkins,* 83 Md.App. at 346, 574 A.2d 356, we hold that there was probable cause sufficient to justify the warrantless search of appellant's vehicle. The totality of the circumstances indicate that Deputy Holland and Sergeant Nicholas reasonably believed, and had probable cause to believe, that contraband or evidence of a crime would be found in appellant's vehicle and that it was necessary to conduct the search at the time they did. Accordingly, the evidence retrieved from the truck was properly admitted into evidence.

## II.

Appellant contends that, because the trial judge failed to inform him that he had a right to take part in the selection of his jury or that the jurors would be drawn from the community, he did not knowingly and voluntarily waive his right to a

jury trial. The State argues, however, that "no prescribed litany is required in explaining the nature of a jury trial," and that the court's explanation to appellant was sufficient to elicit a knowing and voluntary waiver of his right to a jury trial. The trial judge and appellant, appellant's counsel by his side, had the following exchange:

[COURT]: Mr. Dedo [appellant], you have the absolute right to be tried by a jury. Do you understand that?

[APPELLANT]: Yes, sir.

[COURT]: In a jury trial, twelve people would hear the evidence. After hearing the evidence, they would all have to agree upon their verdict. They would all have to be convinced beyond a reasonable doubt that you are guilty before a jury would find you guilty. Do you understand that?

[APPELLANT]: Yes, sir.

[COURT]: Understanding that, do you want to be tried by a jury, or do you want to waive your right to a jury trial and be tried by the Court?

[APPELLANT]: By the Court, sir.

[COURT]: I find the defendant knowingly and voluntarily waives his right to a trial by jury. . . .

It is well established that " '[a]n accused comes to trial cloaked in the Sixth Amendment right to be tried by a jury, and he may lose that right only upon a waiver of it in the constitutional sense.' " *Bruce v. State,* 328 Md. 594, 607, 616 A.2d 392 (1992) (quoting *Smith v. State,* 17 Md.App. 217, 226 n. 11, 301 A.2d 54 (1973)), *cert. denied,* —— U.S. ——, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Maryland Rule 4-246 governs the waiver of a jury in the circuit court. Subparagraph (b) of that rule provides:

**Procedure for Acceptance of Waiver**—A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until it determines, after an examination of the defendant on the record in open court conducted by the

court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the waiver is made knowingly and voluntarily.

Our cases, as well as the plain language of Rule 4–246, establish that for a waiver to be effective, the court must be satisfied that the defendant has given up that right both voluntarily and knowledgeably. *Martinez v. State*, 309 Md. 124, 134, 522 A.2d 950 (1987); *see also Marsh v. State*, 98 Md.App. 686, 694, 635 A.2d 26, *cert. granted*, 334 Md. 729, 641 A.2d 225 (1994). Whether there has been an intelligent waiver of a jury trial is to be decided by the facts and circumstances of each case. *Tibbs v. State*, 323 Md. 28, 31, 590 A.2d 550 (1991); *Dortch v. State*, 290 Md. 229, 428 A.2d 1220 (1981). The questioner need not recite any fixed litany or incantation in order to determine if the right has been properly abandoned. *Tibbs*, 323 Md. at 31, 590 A.2d 550; *Martinez*, 309 Md. at 134, 522 A.2d 950.

In *State v. Hall*, 321 Md. 178, 582 A.2d 507 (1990), the defendant was advised of his right to a jury trial "where twelve people would hear the evidence," all of whom would have to be convinced beyond a reasonable doubt before he could be found guilty. The trial judge also advised the defendant that if he waived his right to a jury trial, the court would hear the evidence and have to be convinced beyond a reasonable doubt before he could be found guilty.[4] The defendant elected to be "Tried by the Court."

On appeal, the defendant argued that he did not knowingly and voluntarily waive his right to a jury trial. The Court disagreed, holding that

the record ... demonstrates that the court could fairly be satisfied that [the defendant] had the requisite knowledge of the jury trial right, that the waiver was voluntary, and that the requirements of [Rule 4–246] were satisfied. Moreover,

---

4. *But see Robinson v. State*, 67 Md.App. 445, 508 A.2d 159, *cert. denied*, 307 Md. 261, 513 A.2d 314 (1986) (it is no longer required that a recitation on the record of the reasonable doubt standard is a precondition for a trial court's acceptance of a waiver of a jury trial).

the court was not required to advise [the defendant], as he contends, as to the details of the jury selection process. *Id.* at 183, 582 A.2d 507.

■ In the instant case, appellant, on the record, acknowledged his understanding that he had an absolute right to a jury trial, that the jury would have been composed of twelve people, and that each juror would have had to find him guilty beyond a reasonable doubt. As explained in *Hall,* Md.Rule 4–246(b) does not mandate that the trial judge advise appellant "as to the details of the jury selection process," i.e., that appellant could take part in the jury selection process and that the jurors would be drawn from the community. *Hall,* 321 Md. at 183, 582 A.2d 507. We have no doubt that, under these circumstances, appellant realized what he was doing and that he knowingly and voluntarily waived his right to a jury trial.

## III.

After appellant was convicted, the following exchange occurred between the court and the participants:

[COURT]: ... Are we ready for sentencing today?

[DEFENSE COUNSEL]: Your Honor, as a result of some discussions with [the prosecutor] which I think you are aware and as a result of [appellant's] ... having some insurance available until the end of August, we would be asking for a deferral of sentence and any type of arrangement to assure that he comes back would be agreeable to the defendant.

[COURT]: All right.

[DEFENSE COUNSEL]: Just for the record, I will show [the prosecutor], this is his last appointment where he is insured.

[COURT]: It is my understanding the State has no objection?

[STATE]: With some qualifications, Your Honor. I believe there have been some discussions about—

[COURT]: He will be placed on home detention pending scheduling of the sentence.

. . . .

[COURT]: ... The defendant will be ordered on home detention how [sic] that is arranged.

[STATE]: And with the stipulation that he have electronic monitoring, and the defense would request that as well. Your Honor, I would ask—

[COURT]: You want electronic monitoring and any violation of the home detention will result in him being incarcerated pending sentencing.

[STATE]: Your Honor, I further request that [appellant] be directed to report immediately to that office.

. . . .

[COURT]: All right. He will be ordered to report there directly after court.

Appellant argues that he is entitled to credit against his sentence, pursuant to Md.Ann.Code, Art. 27, § 638C(a) (1992 Replacement Volume),[5] for the time he spent in the home detention program after he was convicted but before sentencing. The State, relying primarily on *Balderston v. State*, 93 Md.App. 364, 612 A.2d 335 (1992), contends that the language of section 638C(a), awarding credit for time spent in custody, does not contemplate time spent in home detention.

█ It is apparent from the record that, after judgment was entered, appellant requested a postponement of sentencing for medical reasons. The circuit court granted the post-

---

5. Section 638C(a) provides in pertinent part:

(a) *Credit for time spent in custody before conviction or acquittal.*— Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time spent in the custody of any state, county or city jail, correctional institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based, and the term of a definite or life sentence or the minimum and maximum terms of an indeterminate sentence shall be diminished thereby.

ponement, commanding that appellant "be placed in home detention pending scheduling of the sentence." There is no other indication in the record as to what restrictions were placed on appellant's home detention or whether the home detention was a condition of his continued release on bond. Notwithstanding such ambiguities in the record, we are able to hold that Md.Ann.Code, Art. 27, § 638C(a) does not require credit to be awarded for time spent in home detention after conviction but prior to sentencing.

In *Balderston v. State*, 93 Md.App. 364, 612 A.2d 335 (1992), the defendant requested and was granted, as a condition of probation, home confinement. The defendant subsequently violated his probation and the remainder of his original sentence was reinstated. The defendant argued, however, that home confinement is tantamount to imprisonment, or at least custodial confinement, and that he is entitled to credit against the remainder of his sentence, pursuant to section 638C(a), for the time he spent in home confinement.

This Court, relying on *Maus v. State*, 311 Md. 85, 532 A.2d 1066 (1987),[6] held:

> [V]oluntary home detention, a situation in which a defendant can leave his home to go to work, and has freedom of movement and association within his home, cannot be considered "custodial," or the equivalent of custody. On the contrary, the reason appellant requested that he be permitted to participate in home confinement is because it is *not* the equivalent of custody, *i.e.*, he could tend to his responsibilities and maintain his job. Thus, we reject appellant's argument that voluntary home confinement is the equivalent

---

**6.** The Court of Appeals in *Maus* held that the defendant's commitment to a drug rehabilitation program as a condition of his probation was not "custody" within the meaning of section 638C(a) because (1) it was not punishment imposed by the sentencing court, but was chosen by the defendant, and (2) the drug rehabilitation program was a private facility and so there was no custody in a public institution as required by section 638C(a). *Maus v. State, 311 Md. 85, 105, 532 A.2d 1066 (1987).*

of "custody," and hold that, contrary to his claim, he is not entitled, as a matter of right, to sentencing credit for the 45 days he spent in voluntary home confinement.

*Id.* 93 Md.App. at 370, 612 A.2d 335 (emphasis in the original; footnote omitted). *Accord Schlossman v. State,* 105 Md.App. 277, 659 A.2d 371 (1995).

We believe the reasoning of *Balderston* is equally applicable to the case *sub judice.* It is apparent from the record that home detention was granted to appellant, at his request, so that he could maintain a doctor's appointment, presumably while he was still covered by medical insurance. Although the record does not disclose what restrictions, if any, were imposed on appellant, it is clear that the operation of the home monitoring would allow appellant, at the least, to leave his house to visit the doctor. Accordingly, as explained in *Balderston,* the reason appellant requested home detention is because it is *not* the equivalent of custody,[7] i.e., he could tend to his medical and insurance needs. Therefore, we hold that appellant's time spent in home confinement post conviction but presentence is not "custody" for the purpose of crediting time served pursuant to section 638C(a). Indeed, the majority of courts interpreting whether home confinement constitutes being "in custody" have held that it does not. *See United States v. Wickman,* 955 F.2d 592, 593 (8th Cir.1992) (house arrest as condition of pretrial release does not constitute official detention for sentencing credit); *United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991) (voluntary confinement to comfort of one's home is not the functional equivalent of official detention); *State v. Climer,* 896 P.2d 346 (Idaho Ct.App.1995) (incarceration means to confine in a prison or jail, not home confinement); *State v. Muratella,* 240 Neb. 567, 483 N.W.2d

---

*See also Reno v. Koray,* —— U.S. ——, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).

7. In *People v. Ramos,* 138 Ill.2d 152, 149 Ill.Dec. 273, 561 N.E.2d 643 (1990), the Supreme Court of Illinois explained that home confinement is not equivalent to confinement in a jail or prison because an "offender who is detained at home is not subject to the regimentation of penal institutions" but "once inside the residence, enjoys unrestricted freedom of activity, movement, and association." *Id.* at 277, 561 N.E.2d at 647.

128, 130 (1992) ("home detention on probation, subject to electronic monitoring, is insufficiently restrictive to constitute 'custody' for purposes of granting sentencing credit"); *People v. Denning*, 204 Ill.App.3d 720, 149 Ill.Dec. 890, 891, 562 N.E.2d 354, 355 (1990) (defendant not entitled to credit for time served in home confinement even though home confinement was condition of probation and not part of trial bond); *State v. Pettis*, 149 Wis.2d 207, 441 N.W.2d 247, 250 (Ct.App. 1989) (home detention as condition of bail does not render defendant in custody for purposes of sentence credit), *review denied*, 439 N.W.2d 144 (Wis.1989). *But see Capes v. State*, 634 N.E.2d 1334, 1335 (Ind.1994) (appellant in pre-trial home detention was "confined" for purposes of calculating the accumulation of credit time); *State v. Speaks*, 119 Wash.2d 204, 829 P.2d 1096 (1992) (sentencing credit given for home detention where statute so provides).

■■■ Appellant suggests that *Balderston* is distinguishable from the instant case in that he was subject to home confinement prior to sentencing, whereas in *Balderston* the defendant was sentenced to home confinement as a condition of his probation. Specifically, appellant contends that, unlike *Balderston*, the purpose of his home confinement was "strictly a means of securing his appearance at sentencing." We discern no meaningful difference between home confinement instituted prior to sentencing and home confinement as a condition of probation. It is beyond cavil that a defendant is not awarded credit, pursuant to Md.Ann.Code, Art. 27, § 638C(a), for time spent free on bond, although the purpose of posting the bond is also to secure the defendant's appearance at a subsequent hearing or trial. We believe the same applies to a defendant placed in home confinement as a means of securing his appearance at sentencing.

In *People v. Ramos*, 138 Ill.2d 152, 149 Ill.Dec. 273, 561 N.E.2d 643 (1990), the defendant, after arrest on a charge of residential burglary, was released on a recognizance bond with home detention as a condition of the bond. Under the condition of home detention, the defendant was not to leave his

residence unless he first obtained permission to do so from the court or his probation officer. During the 168–day period between defendant's release on bond and the entry of his guilty plea, the defendant was allowed to leave the home on only three occasions.

The trial judge subsequently sentenced the defendant to four years' imprisonment, whereupon the defendant requested that his prison sentence be reduced by the 168 days he spent in home confinement following his release on bond. The trial judge denied the defendant's request.

On appeal, the Supreme Court of Illinois held that the "defendant's period of home confinement was not 'time spent in custody' within the meaning of the [Illinois sentencing credit] statute."[8] The court explained:

> Home confinement, though restrictive, differs in several important respects from confinement in a jail or prison. An offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population.

*Id.* at 277, 561 N.E.2d at 647. Notwithstanding the fact that appellant was given home detention as a condition of his bail to ensure that he appeared for trial, the court concluded that the term "custody" does not " 'include the period of time during which the defendant was released on bail,' " even when home detention is imposed. *Id.* at 276, 561 N.E.2d at 646 (quoting *People ex rel. Morrison v. Sielaff,* 58 Ill.2d 91, 316 N.E.2d 769 (1974)).

---

8. Section 5–8–7(b) of the Illinois Unified Code of Corrections states:
 The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3–6–3 of this Code.
 Ill.Rev.Stat. ch. 38, para. 1005–8–7(b) (1987).

Appellant also argues that "constitutional problems of fundamental fairness and equal protection arise when such a defendant is not given credit against his sentence." In support of this contention, appellant offers the following fictional scenario to make his point:

[T]wo defendants convicted of the same crime and given the same sentence, two months in a Wicomico County Department of Corrections home detention program. One [defendant A] posted bond for his pretrial release; the other [defendant B] was unable to do so and, as a result, spent two months before sentencing in the very same home detention program. If the second hypothetical defendant [B] is not entitled to credit for those two months under § 638C(a), he, in effect, received punishment twice as severe as the first defendant [A]. There is no compelling state interest—indeed, there is not even a rational basis—for such disparate infringements on this fundamental right to one's personal liberty.

At the outset, we note that the circumstances surrounding appellant's home confinement are very different from those set forth in the unconvincing scenario *supra*. Appellant was given home confinement after he was convicted, at his request, in order to facilitate a personal need and to tend to certain private insurance matters before sentencing; he was not given home confinement pretrial in lieu of bond. Accordingly, appellant's scenario fails to portray accurately the circumstances of this case for any purpose, let alone comparability. Specifically, appellant obviously cannot be likened to defendant A; nor is he defendant B because appellant was on bond pretrial in the instant case.

We fail to see an equal protection problem.[9] The purpose of giving appellant home confinement presentencing was not to punish him for the crime of which he was convicted,

---

9. Section I of the Fourteenth Amendment to the United States Constitution provides in part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Although the Maryland Constitution does not contain an express equal protection clause, "we have long held that equal protection is implicitly guaranteed by the due

but to allow him some latitude to tend to his needs while, at the same time, balancing the State's and the court's objective of ensuring his appearance at sentencing. The other alternative available to the court to assure appellant's attendance at sentencing, placing him in jail, was obviously what appellant sought to avoid. Appellant made no request that he be continued on bond while awaiting sentencing. Had defendant A in appellant's scenario been given home confinement in lieu of his ability to post bond, he too would have been denied credit for such confinement. Appellant, therefore, was not given a greater punishment than defendant A, and there is no violation of his equal protection rights.[10]

. Appellant also argues, relying on *North Carolina v. Pearce*, 395 U.S. 711, 718, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969), that he is "denied his double jeopardy protection against multiple punishment for a single offense, which is implicated 'whenever punishment already endured is not fully subtracted from any new sentence imposed.'" In *Pearce*, the defendant was convicted of assault with intent to rape and sentenced to prison for a term of twelve to fifteen years. After a post-conviction proceeding, the court reversed his conviction. The defendant was thereupon retried, convicted, and sentenced to eight years' imprisonment which, when added to the time the defendant had already spent in prison, the parties agreed amounted to a longer total sentence than that originally imposed.

The Supreme Court, in addressing the defendant's claim that he should be credited with the time served under the original sentence, concluded:

process provision found in Article 24 of the Declaration of Rights." *Kirsch v. Prince George's County*, 331 Md. 89, 96, 626 A.2d 372 (1993) (citing cases).

10. We note that it is similarly not unfair for the State to allow credit for involuntary, court-required imprisonment or treatment, but not to allow it for home confinement which, as here, has been requested by the individual who subsequently seeks credit for the time spent in the home confinement. *See Maus v. State*, 311 Md. 85, 107, 532 A.2d 1066 (1987).

We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" in imposing sentence upon a new conviction for the same offense.

*Id.* at 718–19, 89 S.Ct. at 2077. As summarized in *Donaldson v. State,* 305 Md. 522, 505 A.2d 527 (1986):

[The double jeopardy clause of the fifth amendment] forbids that "any person be subject for the same offense to be twice put in jeopardy of life or limb," and it flows to the states through the fourteenth amendment. The clause ordinarily protects against a second prosecution for the same offense after an acquittal or a final conviction, against multiple punishments for the same offense, and against an increase in the punishment imposed upon a conviction.

*Id.* at 530, 505 A.2d 527 (citations omitted).

In the case *sub judice,* there has been but one prosecution and one punishment. Although *Pearce* states, as appellant contends, that double jeopardy protection is implicated whenever "punishment already endured is not fully subtracted from any new sentence imposed," such is only the case where a second prosecution threatens to extend punishment beyond that which was originally imposed during the first prosecution. *See Pearce,* 395 U.S. at 718–19, 89 S.Ct. at 2077. In the instant case, as explained *supra,* appellant voluntarily requested home detention so that he could tend to medical and insurance needs. The circuit court granted his request, not to exact punishment for the crime of which he was convicted, but to allow him that freedom to tend to those needs balanced against the objective of ensuring his appearance at sentencing. Accordingly, appellant was not denied credit for punishment already exacted, *see id.* at 718, 89 S.Ct. at 2077, and the protections afforded by the double jeopardy clause are not applicable.

Appellant also argues that, pursuant to Md.Ann.Code, Art. 27, § 645–II (1992 Replacement Volume), he is entitled to a "diminution of the period of his confinement based on the

length of his [home] detention just as he would had he served the time in jail or prison." The relevant provisions of section 645–II provide:

(b) *Qualifications for participants.*—In Wicomico County, when an individual who has no other charges pending in any jurisdiction is sentenced to the custody of the Director of the Wicomico County Department of Corrections, the court may, at the time of sentencing or at any time during the individual's incarceration, prescribe that the individual may participate in [home detention].

. . . .

(e) *Violations of trust or conditions.*—(1) In the event of any violation of trust or conditions prescribed by the court or the Wicomico County Department of Corrections for participation in [home detention], a prisoner may be removed from [home detention] and any earned diminution of the period of the prisoner's confinement may be canceled. . . .

Md.Ann.Code, Art. 27, § 645–II(b) & (e)(1).

 Although subsection (e) may, as appellant suggests, contemplate diminution of a defendant's sentence for time served in home detention, it is clear that subsection (a) provides that this section is not invoked until the "time of sentencing or at any time during the individual's incarceration." Appellant was given home detention on 15 June 1994, approximately three months prior to sentencing.[11] Indeed, the trial judge explained that appellant "was placed on home detention *pending scheduling of the sentence.*" (Emphasis added.) Consequently, because appellant was placed in home detention prior to sentencing, and not at sentencing or during his incarceration, section 645–II is inapplicable to the case at bar.

 Lastly, appellant contends that, because home confinement manifests "the essential features of incarceration, the exercise of sound discretion compelled awarding him credit for

---

**11.** The sentencing hearing was held on 4 September 1994.

that period of confinement." In light of our discussion *supra,* holding that home confinement is not "custody" for the purposes of sentencing credit, it is plain that home confinement similarly does not constitute incarceration. *See State v. Climer,* 896 P.2d 346 (Idaho Ct.App.1995) (incarceration means to confine in a prison or jail, not home detention). Accordingly, we hold that the trial court did not abuse its discretion in denying appellant sentencing credit for his time spent in home confinement.

■■ What we have said to this point is only that a defendant who has received home confinement for any presentence purpose is not entitled by statute to a formulaic, day-for-day credit against the sentence ultimately imposed. A trial court may, however, generally consider how the defendant performed while under a presentence home confinement order in fashioning an appropriate sentence for that defendant.

## IV.

■■ Notwithstanding the sentencing transcript's indication that appellant was to be sentenced to two years' imprisonment, the docket entries and the commitment record show a three-year sentence. Appellant argues that this Court should direct the circuit court to amend the docket entries and the commitment record to conform to the sentencing transcript and reflect the two-year sentence imposed. We shall oblige.

As explained in *Savoy v. State,* 336 Md. 355, 360 n. 6, 648 A.2d 683 (1994): "The accuracy of [the] docket entry is belied by the transcript. Ordinarily, when there is a conflict between the transcript and the docket entries, unless it is shown to be in error, it is the transcript that prevails." *See also Waller v. Maryland Nat'l Bank,* 332 Md. 375, 379, 631 A.2d 447 (1993); *Roberts v. State,* 219 Md. 485, 488, 150 A.2d 448 (1959); *Shade v. State,* 18 Md.App. 407, 411, 306 A.2d 560 (1973). Although the State asserts that the sentencing transcript is in error, it points to no evidence to that end, other than the fact that the sentencing judge signed the commit-

ment order stating a three-year sentence.[12] Both parties concede, however, that the court reporter stated that her notes reflected a two-year sentence. Consequently, we direct the circuit court to amend the docket entries and commitment record to reflect the two-year sentence indicated in the sentencing transcript.

JUDGMENT AFFIRMED. THE CIRCUIT COURT IS DIRECTED TO AMEND THE DOCKET ENTRIES AND COMMITMENT RECORD IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY WICOMICO COUNTY.

MURPHY, Judge, concurring.

I agree with everything in Judge Harrell's opinion, but wish to underscore that the holding in Part III does not prohibit the imposition of a sentence that includes a full credit for any home detention that preceded the sentence. If the sentencing judge decides that it is appropriate to do so, he or she may grant a day-for-day credit to a defendant who had been placed on home detention as a condition of pretrial release.

---

12. The State argues that the judge is presumed to know what he was signing.