**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William LUCCI, Defendant-Appellant.**

No. 84–1055.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1985.

Decided March 25, 1985.

Rehearing Denied April 26, 1985.

Michael D. Gelety (argued), Fort Lauderdale, Fla., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Stephen R. Cochell, Asst. U.S. Atty. (argued), for plaintiff-appellee.

Before ENGEL and MARTIN, Circuit Judges and PORTER, Senior District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

William Lucci appeals from his conviction for possession with intent to distribute hash oil and conspiracy to perform the same crime. He argued that the district court improperly failed to exclude the baggage containing the hash oil. We affirm the judgment of the district court.

Although the hash oil was seized from Lucci and his traveling companion, Dennis Christman, in Detroit, their first encounter with police was at the Fort Lauderdale Airport, Florida. Broward County Sheriff's Department narcotics agents Richard Green and Stephen Gaffney observed Lucci and Christman purchase tickets to Detroit and label and check their baggage on December 21, 1982.

The agents continued to observe Lucci and Christman, whose nervousness had aroused their suspicions, and the suspects observed Agent Gaffney observing them. When Lucci and Christman saw Agent Gaffney again at the checkin desk just prior to boarding, Lucci told Christman, "There he is," pointing to Agent Gaffney. (There was hearsay evidence given at the suppression hearing that Lucci said, "That's him, they're on to us," but Agent Green, the only agent who heard the remark, testified at trial that Lucci said, "There he is.") After Lucci and Christman got their boarding passes, they turned around and started walking toward the exit.

Agent Gaffney ran after the two men and caught up with them near the security checkpoint. He identified himself and asked if they had a minute to speak. They said, "Sure." He asked to see their identi-

fication and airline tickets, which they produced. The airline tickets had baggage claim checks, numbered 182 and 183, affixed to them. Agent Gaffney testified at trial that they were very cooperative, but so nervous that they both had trouble getting their licenses out of their wallets.

Agent Gaffney then asked their permission to check their carry-on baggage. The suspects told him they had checked baggage and that it would be all right for him to look at their checked baggage. He told them, however, that they had only two or three minutes to catch their plane and he was concerned that they might miss it. After Lucci and Christman boarded their plane, however, Agent Gaffney went to the baggage area and ascertained that the bags with their claim check numbers bore their names.

Agent Gaffney then contacted authorities in Detroit, ultimately speaking with Drug Enforcement Administration Senior Special Agent David McDougal. He gave Agent McDougal detailed descriptions of Lucci and Christman and told him what had transpired at Fort Lauderdale.

Agent McDougal, with DEA Agent Richard Fling and two other narcotics agents, watched Lucci and Christman get off their flight in Detroit. The suspects made a telephone call and appeared to be "scoping," or looking about to see if they were being observed. They then went to curb outside the terminal, instead of proceeding to the baggage claim area as most passengers do.

Agent McDougal went to the baggage claim area, while Agent Fling and the other two agents followed the two suspects outside. There Agent Fling identified himself and the other two agents as police officers and asked to see their identification and airline tickets. The ticket folders had staple holes, but the claim tickets were no longer affixed. Agent Fling asked if they had any checked baggage, and they replied that they did not. Agent Fling told them

* Honorable David S. Porter, Senior United States District Judge for the Southern District of Ohio,    sitting by designation.

that this conflicted with information he had; he asked them to accompany him to the airport DEA office so he could verify his information. They agreed. The agents took the suspects to the DEA office and questioned them there with the door open.

Meanwhile, Agent McDougal waited at the baggage claim area while the passengers picked up their baggage. After the baggage carousel stopped, five bags remained, including the two bags labeled with the suspects' names. Agent McDougal took the two bags with the permission of an airline employee. He sniffed the bags and detected a marijuana-like odor. Agent McDougal testified at the suppression hearing that he could identify marijuana, hashish, and many other narcotics by odor. He qualified at trial as an expert in drug identification and had for ten years been training American and foreign police in drug identification.

Agent McDougal took the bags to the DEA office, where the other agents had been with the suspects for eight to ten minutes. Lucci and Christman both denied ownership or knowledge of the bags. Agent McDougal asked how they could explain their name tags on the bags. Christman answered, "I have no idea," and appeared to have a flip manner; Lucci made no response.

Agent McDougal then asked the suspects if they wanted to talk to a lawyer. Christman answered, "No. I think we just want to leave." Agent McDougal stood up and told them they would have to wait while he talked to an Assistant United States Attorney. He then called the attorney, who told him to let the suspects go until the presence of drugs in the bags could be verified by a dog. Christman and Lucci accordingly were allowed to leave.

A drug-sniffing dog became available several hours later and quickly identified the bags as containing drugs. The bags were searched the next day pursuant to warrant and found each to contain hash oil, about four kilograms altogether. The hash oil had an estimated street value in excess of $300,000. Lucci subsequently was arrested, but Christman remains at large.

■ Lucci seeks on appeal, as he sought below, to exclude the two bags and their contents from evidence. This and other circuits have recognized, however, that "[o]ne who disclaims any interest in luggage thereby disclaims any concern about whether or not the contents of the luggage remain private." *United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir.1982) (quoting *United States v. Miller,* 589 F.2d 1117, 1131 (1st Cir.1978)), *cert. denied,* — U.S. —, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983). *Cf. United States v. Sanders,* 719 F.2d 882, 886 (6th Cir.1983) (affirmative disclaimer required for privacy right to be lost). Lucci's disclaimer precludes exclusion unless it was prompted by an unconstitutional seizure or arrest. *Tolbert,* 692 F.2d at 1045; *United States v. Morin,* 665 F.2d 765, 770 (5th Cir.1982).

■ Lucci argued that there were unconstitutional seizures in both Fort Lauderdale and Detroit. In Fort Lauderdale, however, the officer merely approached the suspects and asked them routine, nonthreatening questions. At the conclusion of the brief interview, he allowed them to continue on their way, notwithstanding that they had consented to search of both their carry-on and their checked baggage. This sort of brief encounter is not a seizure. *United States v. Collis,* 699 F.2d 832, 835 (6th Cir.), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983); *Tolbert,* 692 F.2d at 1046. The fact that Agent Gaffney ran to catch the suspects before they left the terminal does not, on these facts, change our conclusion.

■ There was in fact a seizure at curbside in Detroit; when Agent Fling and the two other police officers asked the suspects to accompany them to a DEA office, they could not reasonably believe they were free to leave. *Tolbert,* 692 F.2d at 1046; *United States v. Jefferson,* 650 F.2d 854, 856 (6th Cir.1981). But this sort of brief investigatory detention is permissible if supported by a reasonable and articula-

**156**

ble suspicion of criminal activity. *Tolbert*, 692 F.2d at 1046–47.

 The facts here are practically identical to these in *Tolbert*, with only two differences. In *Tolbert*, the suspect was actually departing the airport without her luggage, whereas the suspects here were only standing on the curb outside the. terminal. Here, however, the suspects denied possession of luggage to Agent Fling even before the seizure and had removed the baggage claim checks from their ticket folders, when he knew they had checked baggage in Fort Lauderdale. We think this case is even more compelling than in *Tolbert*.

The conviction is affirmed.