**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Anthony Jerome CLARDY,**
**Defendant-Appellant.**

**No. 86–6071.**

United States Court of Appeals,
Sixth Circuit.

Argued April 17, 1987.

Decided June 3, 1987.

Harry P. Hellings, Jr. (argued), Covington, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Jim Zerhusen (argued), for plaintiff-appellee.

Before MARTIN, JONES and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Anthony Jerome Clardy was arrested in April 1986 for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Clardy moved to suppress the admission of the cocaine found in his luggage, arguing that he and the luggage had been seized in violation of the fourth amendment. After the district court denied his motion, Clardy entered a conditional guilty plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. We find that Clardy was seized in violation of the fourth amendment.

In July 1985, Clardy and another man later identified as Stephen Spencer arrived in the Atlanta airport following a flight from Miami. A Drug Enforcement Administration agent who was monitoring flights from South Florida became suspicious of Spencer who was wearing a lot of jewelry and sunglasses at 6:15 a.m. He observed Spencer ask about connecting flights to Cincinnati and noticed his boarding pass carried the name "Williams." Spencer then walked across the concourse, waited against the wall, and was shortly joined by a man later identified as Clardy. They walked down the hallway together.

The agent checked the airline computer for ticket information for the flight and learned that two tickets were bought with cash just prior to departure in the names of "Mark and Jason Williams." The computer also showed the Williamses seated next to one another on the flight. When the agent telephoned the call-back number on the reservation, the person who answered was unfamiliar with Mark or Jason Williams.

The agent decided to question the two men but their flight to Cincinnati had departed. He called Cincinnati Airport Police and relayed the information he had gathered and his observations to Sergeant Allen Curry. Lieutenant Joe Weil arranged to conduct surveillance of the two men. When they arrived at the airport they were observed leaving the airplane last, walking together to the carrousel to retrieve luggage, and going to the curbside to hail a taxi.

Curry stationed himself in a police cruiser in the taxi area and observed the two men for the first time as they emerged from the terminal. While they waited for their taxi Curry moved his cruiser to a space a little beyond the taxi area, got out, and began checking cars in an effort to be inconspicuous. He testified that Spencer stared at him "like he was real nervous." When the men's taxi arrived Curry backed his cruiser until it was directly in front of it. Curry and a Lieutenant Denser, both in uniform, approached Clardy and Spencer, identified themselves as airport police conducting a narcotics investigation, and frisked the two men while they placed their hands on the taxi.

When asked for identification, Clardy produced an Ohio driver's license in the name of Anthony J. Clardy. Curry asked for permission to search his bags and Clardy initially consented but then retracted. Curry read Clardy his Miranda rights. Neither Spencer nor Clardy were able to produce airline tickets or baggage claim checks.

Meanwhile Lieutenant Weil had arrived in plainclothes. The officers asked the two men to accompany them to the airport police station approximately 75 yards away. Their three pieces of luggage and a newspaper lying in the back seat with the airline tickets and baggage claim checks folded inside were taken from the cab to the station.

At the station, the men were placed in separate rooms and questioned. Clardy claimed ownership of a green bag and consented to its being searched. He withdrew consent for a brown soft-sided bag which he explained he shared with his companion. After verifying the identity of the two men, the officers said they were free to go but that the bags would be held until a search warrant was obtained. As they were leaving, each man disclaimed ownership of the

brown soft-sided bag. About two and one-half hours later, the officers obtained a search warrant and searched the bags. The brown soft-sided bag contained approximately 168 grams of cocaine.

The issues on appeal are whether the district court erred in finding that neither the seizure of Clardy nor the seizure of his luggage violated the fourth amendment.

The fourth amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The amendment's requirement that searches and seizures be founded on objective justifications encompasses "all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest.'" *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (citations omitted) (quoting *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975)).

We note at the outset that "each case raising a Fourth Amendment issue must be judged on its own facts." *United States v. Saperstein,* 723 F.2d 1221, 1227 (6th Cir. 1983) (quoting *United States v. Mendenhall,* 446 U.S. 544, 565 n. 6, 100 S.Ct. 1870, 1883, 64 L.Ed.2d 497 (1980) (Powell, J., concurring)). As Justice White wrote in *Florida v. Royer,*

> Even in the discrete category of airport encounters, there will be endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence or a paragraph a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment.

460 U.S. 491, 506–07, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (plurality).

In deciding whether Clardy was seized in violation of the fourth amendment, we first address the question of whether Clardy was seized and, if so, when. The test in the Sixth Circuit for determining whether a seizure has occurred is "whether, under the totality of the circumstances, a reasonable person would have believed he or she was not free to walk away." *Saperstein,* 723 F.2d at 1225 (citing *United States v. Moore,* 675 F.2d 802 (6th Cir.1982) and *United States v. Jefferson,* 650 F.2d 854 (6th Cir.1981)); *United States v. Lucci,* 758 F.2d 153, 155 (6th Cir.1985).

■ We hold that under the facts of this case Clardy was seized as he stood outside the airport preparing to enter the taxi. Curry, in uniform, backed his cruiser directly in front of the taxi, blocking its exit. Curry testified that if the taxi had tried to leave he would have stopped it. He beckoned Clardy to approach him, and identified himself as an airport police officer conducting a narcotics investigation. Officer Denser, also in uniform, frisked and patted down Spencer who was spread-eagle on the front of the cab; Curry then frisked and patted down Clardy and gave him a *Miranda* warning. A plainclothes officer appeared moments later. Under the totality of the circumstances, a reasonable person at this point would not have felt free to walk away and, thus, Clardy was seized at this point.

■ The next inquiry is whether the seizure was permissible. In order to be permissible for fourth amendment purposes, a brief investigatory detention, such as initially occurred in this case, must be "supported by a reasonable and articulable suspicion of criminal activity." *Lucci,* 758 F.2d at 155–56; *Reid,* 448 U.S. at 440, 100 S.Ct. at 2753. The Supreme Court has acknowledged that terms like "articulable reasons" and "founded suspicion" fail to provide clear guidelines to govern the many varying factual situations that will appear in these cases, however the Court states that based on the entire set of circumstances, "detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Tolbert,* 692 F.2d 1041, 1047 (6th Cir.1982) (quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

In *Cortez* the Supreme Court established a two-pronged approach for reviewing the totality of the circumstances in order to assess the legality of a stop. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695. First, the Court allows for consideration of

> various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

*Id.*

Falling into this first category of objective observations are the characteristics found in the Drug Enforcement Administration's drug courier profile, "an informally compiled abstract of characteristics thought typical of persons carrying illicit drugs." *United States v. Mendenhall*, 446 U.S. at 547 n. 1, 100 S.Ct. at 1873 n. 1. In the instant case, the DEA agent in Atlanta testified that Clardy met only one characteristic of the profile; he was traveling from Miami, a known source city. Once Clardy arrived at the Cincinnati airport, the magistrate's report indicates that Lieutenant Weil observed no unusual or suspicious behavior by Clardy. Weil did testify at the suppression hearing that Clardy and Spencer were the last to deplane, however Weil may not have been aware that exiting first or last is a factor included in the drug courier profile. Officer Curry testified that he had no occasion to observe Clardy prior to arriving in his cruiser in the taxi area outside the terminal. Thus, considering the testimony of all the officers, Clardy arguably fit certain characteristics of the drug courier profile and was traveling with someone who met additional characteristics. However, "[s]atisfying the drug courier profile does not, standing alone, justify a seizure." *Tolbert*, 692 F.2d at 1047 (citing *Reid*, 448 U.S. 438, 100 S.Ct. 2752).

The second prong of the *Cortez* test requires that this process of gathering objective information "raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Cortez*, 449 U.S. at 418, 100 S.Ct. at 695. In other cases, courts have considered certain behavior to be important in yielding particularized suspicion. In *Tolbert*, the suspect appeared very nervous and agitated when questioned, lied about the purchase date of her ticket, and started to leave the airport without her luggage. 692 F.2d at 1047. In *United States v. Moore*, the suspect lied about having arrived on a flight from Fort Lauderdale. 675 F.2d at 808. In *United States v. Nembhard*, the suspects attempted to conceal they were traveling together and used simulated telephone calls as opportunities to survey hazardous areas. 676 F.2d 193, 203–04 (6th Cir.1982).

In the present case there is nothing to indicate that the second prong of the *Cortez* test is satisfied. The Atlanta agent testified that he found it odd that the two men had apparently been seated next to each other but depland separately. However, the record does not show that they attempted to conceal that they were traveling together. Spencer, in fact, waited for Clardy to deplane in Atlanta and they then walked down the concourse together. In Cincinnati they deplaned, retrieved luggage, and went to the taxi area together.

The Atlanta agent testified that the two men were traveling under false names. However, since none of the officers testified that they recognized the suspects, it is illogical that they could have known the names were assumed prior to the seizure at the Cincinnati airport.

The totality of the circumstances in the present case, therefore, did not yield a particularized suspicion which warranted a seizure based on a reasonable and articulable suspicion of criminal activity. Because we find the seizure of Clardy unconstitutional, the evidence obtained as a result of that seizure cannot be used against him. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, the ruling of the district court is reversed and the case is remanded for further consideration.